T.C. Memo. 2015-153

UNITED STATES TAX COURT

SCOTT E. CHARNAS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9095-13L.                                    Filed August 11, 2015.

Scott E. Charnas, pro se.

<u>Michael J. De Matos</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, <u>Judge</u>:  Petitioner seeks review, pursuant to sections 6330 and

6320, of respondent's determination to proceed with collection of petitioner's

unpaid income tax liabilities for 2009 and 2010.[1]  We must decide whether

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue

(continued...)

[*2] respondent abused his discretion in refusing petitioner's request for a collection alternative and in sustaining the proposed collection action.

FINDINGS OF FACT

Some of the facts and certain exhibits have been stipulated. The parties' stipulated facts and exhibits are incorporated in this opinion by reference and are found accordingly. At the time of filing his petition, petitioner resided in New York.

Petitioner is an attorney who has more than three decades of experience practicing law. Petitioner's main source of income is contingency fees from his representation of plaintiffs in personal injury actions. Petitioner timely filed his individual income tax returns for 2009 and 2010 but did not fully pay his income tax liabilities. To collect petitioner's outstanding balances, respondent issued a Final Notice of Intent to Levy and Notice of Your Right to a Hearing on August 22, 2012. It was followed by a notice of Federal tax lien issued September 4, 2012. In response petitioner, who was represented at the time, submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing, via facsimile

---

[1](...continued)
Code of 1986, as amended and in effect at all relevant times.

**[*3]** copy on September 18, 2012. The Form 12153 shows checked boxes for all three collection alternatives.

Petitioner's collection due process hearing (CDP hearing) was assigned to Settlement Officer Marilyn Matthews (SO Matthews), who sent petitioner a letter on November 16, 2012, scheduling a telephone CDP hearing for December 13, 2012. The letter stated that SO Matthews could not consider a collection alternative without first receiving a copy of petitioner's 2011 tax return, proof of estimated tax payments, and a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals. After the parties rescheduled it twice, the telephone hearing was set for February 20, 2013, at 11 a.m. Petitioner failed to submit the requested documents one week before the hearing. Instead, petitioner and his representative arrived, with documents in hand, at the Internal Revenue Service (IRS) office at 10 a.m. on the day for which the hearing was scheduled. Petitioner testified that he went to the IRS office "with the intention of telling the IRS officer of * * * his true circumstances and that the * * * Form 433-A was in fact misleading as it applied to * * * [him]".

On February 20, 2013, the day of the scheduled CDP hearing, SO Matthews was on sick leave and unavailable to meet with petitioner and his representative. Petitioner and his representative were told that SO Matthews would contact them

**[*4]** with a new hearing date. Before leaving, petitioner and his representative left the documents with an IRS employee. The documents included a copy of petitioner's 2011 Form 1040, U.S. Individual Income Tax Return, a Form 433-A, a Form 433-B, Collection Information Statement for Businesses, and substantiation of the contents of the two forms.

Petitioner's 2011 Form 1040 showed total income of $55,853 for the year, or $4,653 per month. In contrast, the estimated gross income for 2012 on petitioner's Form 433-A was $413,733, or $34,479 per month. The Form 433-A also showed no significant assets owned by petitioner. The differing figures resulted from the fact that petitioner's main income source, his contingency fees, varies widely year to year. For 2009 through 2012 petitioner reported adjusted gross income of $806,639, $364,096, $32,071, and $438,973, respectively. During the 30 days before he completed the Form 433-A, petitioner's law firm income totaled only $485. Petitioner also noted the variable nature of his income on the Form 433-B. Next to "Annual Salary/Draw", petitioner wrote "413732.55 (highly variable)" and in response to the question "Any Increase/decrease In Income anticipated" petitioner checked the "Yes" box and wrote "Income varies significantly from year to year". Petitioner did not specify when or by how much his income would change, instead writing "Unknown" in the answer box

[*5] requesting these details.  He also did not take advantage of the instruction to "Use attachment if needed".

After calling the office to retrieve her messages, SO Matthews notified petitioner's representative that, when she returned to work, she would review the documents and call him to discuss the case; but it is unclear from the record how or when SO Matthews so notified petitioner's representative.  SO Matthews reviewed the documents on February 25, 2013.  Her notes for that day are in two parts.  The first part describes SO Matthews' review of petitioner's documents.  The paragraph begins by discussing petitioner's 2011 return, including that it reported $8,382 in tax due on $11,716 in nonpassive income from Schedule K-1, Partner's Share of Income, Credits, Deductions, etc., and $44,123 in income from his legal practice.  SO Matthews' notes then state that neither petitioner nor his legal practice, a corporation, was fully in compliance with tax filing and payment obligations.  The notes finish with the following paragraph:  "TP does not qualify for an IA nor an OIC.  TP reported on * * *[Form 433-A] that the net difference between monthly income and expenses is a positive $15,627.32.  TP information indicates that he has the ability to pay.  None of the 3 requested collection alternatives can be considered."  SO Matthews' notes do not address the discrepancy between the 2011 and 2012 income figures.

**[*6]** The second part of SO Matthews' February 25, 2013, notes describes her discussion of the documents with petitioner's representative. SO Matthews' notes state that the representative could not explain how petitioner's income was reported. SO Matthews told petitioner's representative that (1) petitioner did not meet the requirements for an installment agreement or an offer-in-compromise because he was not current with estimated tax payments and (2) that petitioner's claim that he could not pay the tax liabilities would not be considered because the Form 433-A reflected that he had the ability to make monthly payments.

The determination letter, issued April 1, 2013, memorializes SO Matthews' analysis:

> You requested an installment agreement, an offer in compromise, and cannot pay balance as collection alternatives. However, you are not in compliance with estimated tax requirements. Therefore, an installment agreement and offer in compromise could not be considered. Your 433A indicates that you have the ability to make payments, therefore a cannot pay balance as a collection alternative could not be considered. In addition, the taxpayer's law firm is not in compliance with filing/paying requirements.

OPINION

Section 6330(d)(1) grants this Court jurisdiction to review the administrative determination made by the IRS Appeals Office. If a taxpayer's

**[\*7]** underlying tax liability is properly in dispute, the Court will review the determination de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the underlying tax liability is not in issue, we review the determination for abuse of discretion. Id. at 182; see also Sego v. Commissioner, 114 T.C. 604, 609-610 (2000).

The underlying liabilities are not in issue in this case, so we review the Appeals Office's determination for abuse of discretion. We will reject the determination of the Appeals Office only if the determination was arbitrary, capricious, or without sound basis in fact or law. Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006); Goza v. Commissioner, 114 T.C. at 181-182; Woodral v. Commissioner, 112 T.C. 19, 23 (1999). We do not substitute our judgment for that of the Appeals Office, meaning we do not decide independently whether we believe that the levy or lien should be sustained. See, e.g., Murphy v. Commissioner, 125 T.C. at 320; Woodral v. Commissioner, 112 T.C. at 23. Instead, we consider whether, in the course of making its determination, the Appeals Office complied with the legal requirements of an administrative hearing.

At the hearing the Appeals Officer must verify that the requirements of applicable law and administrative procedure have been met, consider any relevant

**[\*8]** issues raised by the taxpayer, and consider whether "any proposed collection action balances the need for efficient collection of taxes with the legitimate concern of the * * * [taxpayer] that any collection action be no more intrusive than necessary." Sec. 6330(c)(3).

In making her determination SO Matthews did not consider the relevant issue, raised by petitioner, of his fluctuating income. Petitioner noted several times on the Form 433-B that the law firm's future income was "unknown" because it "varied significantly" and was "highly variable". Petitioner's Form 1040 for 2011 showed only 13% of the estimated income listed for 2012 on the Form 433-A. SO Matthews did not weigh petitioner's fluctuating income in either the notice of determination or the case activity report when assessing his ability to pay. Respondent contends that petitioner should have attached a letter explaining the nature of his income. However, we conclude that petitioner raised the issue when he made the entries on Form 433-B explaining the variability of his income and that he was not required to elaborate in writing if he intended to discuss the details at his hearing.

Respondent contends petitioner did not sufficiently participate in the hearing. However, we conclude that petitioner did not have a fair opportunity to participate in the hearing. Petitioner completed and submitted the financial

**[\*9]** documents requested, and he traveled to the IRS office on the February 20, 2013, hearing date specifically to discuss the issue of his fluctuating income.[2] Petitioner thought that SO Matthews would contact his representative to reschedule the hearing. However, after SO Matthews was unavailable to hold the CDP hearing on February 20, 2013, she did not schedule a specific time for the rescheduled hearing, so petitioner could not plan to participate. Although petitioner's representative could not explain how petitioner's income was reported, SO Matthews did not provide him time to obtain an explanation from petitioner; she made her determination without waiting for any explanation. Indeed, the record suggests SO Matthews had made her determination before she even spoke with petitioner's representative.

Respondent contends that, even if SO Matthews made her determination before speaking with petitioner's representative, it would not constitute an abuse of discretion because hearings can be conducted via correspondence instead of over the telephone or face to face. Respondent cites <u>Williams v. Commissioner</u>, 718 F.3d 89 (2d Cir. 2013). However, <u>Williams</u> is distinguishable. In <u>Williams</u>

---

[2]Petitioner's attempt to appear at the hearing in person may have been misguided since petitioner concedes that his hearing was scheduled to be by telephone, not face-to-face. However, it does not detract from the validity of petitioner's contention that he had a relevant, nonfrivolous argument he intended to raise at his hearing.

[*10] the taxpayers were denied a face-to-face hearing because they did not comply with a document request. However, SO Matthews did not deny petitioner's request for a hearing and petitioner did comply with the document request, albeit late. Petitioner also never demanded, and concedes that he is not entitled to, a face-to-face hearing. Petitioner merely asks for the opportunity to explain the nature of his income to the settlement officer who is deciding whether to grant a collection alternative.

Respondent also cites the regulations in support of his contention that a correspondence-only hearing is legally sufficient:

> Q-D6. How are CDP hearings conducted?
>
> A-D6. The formal hearing procedures required under the Administrative Procedure Act, 5 U.S.C. 551 et seq., do not apply to CDP hearings. CDP hearings are much like Collection Appeal Program (CAP) hearings in that they are informal in nature and do not require the Appeals officer or employee and the taxpayer, or the taxpayer's representative, to hold a face-to-face meeting. A CDP hearing may, but is not required to, consist of a face-to-face meeting, one or more written or oral communications between an Appeals officer or employee and the taxpayer or the taxpayer's representative, or some combination thereof. A transcript or recording of any face-to-face meeting or conversation between an Appeals officer or employee and the taxpayer or the taxpayer's representative is not required. The taxpayer or the taxpayer's representative does not have the right to subpoena and examine witnesses at a CDP hearing.
>
> Q-D7. If a taxpayer wants a face-to-face CDP hearing, where will it be held?

[*11] A-D7. Except as provided in A-D8 of this paragraph (d)(2), a taxpayer who presents in the CDP hearing request relevant, non-frivolous reasons for disagreement with the proposed levy will ordinarily be offered an opportunity for a face-to-face conference at the Appeals office closest to taxpayer's residence. A business taxpayer will ordinarily be offered an opportunity for a face-to-face conference at the Appeals office closest to the taxpayer's principal place of business. If that is not satisfactory to the taxpayer, the taxpayer will be given an opportunity for a hearing by telephone or by correspondence. In all cases, the Appeals officer or employee will review the case file, as described in A-F4 of paragraph (f)(2). If no face-to-face or telephonic conference is held, or other oral communication takes place, review of the documents in the case file, as described in A-F4 of paragraph (f)(2), will constitute the CDP hearing for purposes of section 6330(b).

[Sec. 301.6330-1(d)(2), Proced. & Admin. Regs.]

The question is not whether a correspondence-only hearing is generally legally sufficient. Rather, the question is whether a correspondence-only hearing was sufficient to provide petitioner the fair hearing to which he is entitled pursuant to sections 6330 and 6320. We note that the regulations provide that, if the taxpayer presents "relevant, non-frivolous reasons for disagreement" with the proposed collection action, the taxpayer will "ordinarily be offered an opportunity for a face-to-face conference". Id. It is only if the offer is unsatisfactory to the taxpayer that the taxpayer will be "given an opportunity for a hearing by telephone or by correspondence". Id.

**[\*12]** CDP hearings are designed to be a forum for considering taxpayers'

legitimate disagreement with collection actions.  The regulations' emphasis on the

taxpayers' preference among face-to-face, telephone, or correspondence hearings

reflects the traditionally informal nature of the CDP hearings.  See Davis v.

Commissioner, 115 T.C. 35, 41 (2000) ("The references in section 6330 to a

hearing by Appeals indicate that Congress contemplated the type of informal

administrative Appeals hearing that has been historically conducted by Appeals

and prescribed by section 601.106(c), Statement of Procedural Rules.").  It is

therefore important to question whether a taxpayer's concerns have been properly

addressed in the CDP hearing.  For example, in Lewis v. Commissioner, T.C.

Memo. 2012-138, 2012 WL 1727625, at \*4, the taxpayer requested a face-to-face

CDP hearing in response to a levy notice because of the complex nature of his

case.  After submitting his financial documents, the taxpayer was assigned a

nearby settlement officer for a face-to-face hearing.  Id., 2012 WL 172765, at \*2.

During the one and only 10.5 minute telephone conversation the assigned

settlement officer held with the taxpayer, the officer requested more documents.

Id.  The taxpayer testified that he mailed an assortment of financial documents to

the settlement officer.  Id. at \*3.  The settlement officer never received them.  Id.

[*13] When, after 103 days, the settlement officer had still not received the additional documents, he issued a notice of determination sustaining the proposed levy. Id.

In concluding in Lewis that the 10.5 minute phone conversation was insufficient to support issuing the notice of determination, the Court listed several errors that the settlement officer made: (1) he failed to review any of the issues the taxpayer had raised with respect to the complicated nature of his case, (2) he failed to indicate that the phone call would constitute the taxpayer's CDP hearing, (3) he failed to follow up with the taxpayer before issuing the notice, and (4) the "determinations were made without the benefit of a scheduled CDP hearing in any format." Id. at *5. The Court recognized that each individual defect standing alone might be insufficient to find an abuse of discretion, but that "the cumulative effect of such defects demonstrate[d] that * * * [the settlement officer] acted both arbitrarily and capriciously in rendering his determination." Id.

We similarly conclude that the cumulative effect of SO Matthews' handling of petitioner's CDP hearing demonstrates that she acted arbitrarily and capriciously in rendering her determination. SO Matthews failed to review the issue of petitioner's fluctuating income, which he (1) traveled to the IRS office to highlight at the hearing scheduled for February 20, 2013, (2) noted on the Form

[*14] 433-B that he submitted to SO Matthews, and (3) supported with his 2011 income tax return. SO Matthews failed to indicate that the review of documents would constitute petitioner's hearing. She failed to follow up with petitioner and schedule a new CDP hearing in which he could plan to participate as requested. The cumulative effect was to limit petitioner's hearing to a review of one set of documents and an unscheduled telephone conversation with petitioner's representative. In another context, review of documents and one telephone conference may be sufficient to address a taxpayer's concerns. However, SO Matthews made her determination without considering petitioner's relevant, nonfrivolous reason for disagreeing with the collection action: his fluctuating annual income. On the basis of the foregoing, we conclude that SO Matthews deprived petitioner of the fair hearing to which he is entitled pursuant to sections 6330 and 6320.

Accordingly, we will remand the instant case to the IRS Appeals Office so that petitioner may have a fair hearing. At the hearing petitioner shall present all information that the Appeals Office reasonably requests and that petitioner wishes to have considered and analyzed in deciding his collection alternative request.

**[\*15]** To reflect the foregoing,

An appropriate order will be issued.
